```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Tasha C. Patrick,                :

         Plaintiff,              :

     v.                          :    Case No. 2:14-cv-2346

                                 :    JUDGE GREGORY L. FROST
Commissioner of Social Security,      Magistrate Judge Kemp

         Defendant.              :
```

                       REPORT AND RECOMMENDATION

                           I.  Introduction

    Plaintiff, Tasha C. Patrick, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on May 26, 2011, and alleged that Plaintiff became disabled on June 1, 2006.

     After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on February 28, 2013.  In a decision dated June 19, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on September 19, 2014, when the Appeals Council denied review.

     After Plaintiff filed this case, the Commissioner filed the administrative record on February 4, 2015.  Plaintiff filed her statement of specific errors on March 6, 2015, to which the Commissioner responded on June 10, 2015.  Plaintiff filed a reply brief onn June 24, 2015, and the case is now ready to decide.

          II.  The Lay Testimony at the Administrative Hearing

     Plaintiff, who was 37 years old at the time of the

administrative hearing and who has a twelfth grade education, testified as follows. Her testimony appears at pages 24-39 of the administrative record.

Plaintiff first testified that she was five feet seven inches tall and had gained 100 pounds in the past year. She was unsure why that had happened. She lived in an apartment with her husband and two children. She had not worked since November of 2006, when she was a cashier at Speedway. That job ended because she had hip and back problems and was also in a car accident.

Plaintiff said she could not lift over five pounds due to her back and to a shoulder injury. Her doctor had recommended water therapy for her back and hip, and suggested hip replacement surgery if she lost weight first. He had prescribed a cane for her to help with balance and also to keep some weight off her left hip.

In terms of physical activities, Plaintiff testified that she could walk half a mile, sit for thirty minutes, and stand for thirty minutes. She used her cane when either standing or walking. She did not go grocery shopping, drive, or cook. She did help her children with homework.

On a typical day, Plaintiff would get dressed, watch television, or do a crossword puzzle. She was unable to do any household chores. She needed help bathing and dressing. Her medications reduced her pain level only a little. Plaintiff described problems with depression and anxiety as well. She said that her back and hip issues were the most significant ones which kept her from working.

Lastly, Plaintiff was asked some questions by the vocational expert. She said that she worked for a home health agency in 2006, a job which involved bathing patients, making beds, and preparing meals. She also did some babysitting for her niece's children, including preparing meals for them.

### III. The Medical Records

The medical records in this case are found beginning on page 334 of the administrative record. The Court will summarize those records, as well as the opinions of the state agency reviewers, to the extent that they are pertinent to Plaintiff's four statements of error.

Plaintiff's hip degeneration is noted as early as August, 2008. Degenerative changes of the lumbar spine were noted at the same time, and she had been reporting back pain for a number of years before. An earlier report from 2008 also showed that she complained of migraine headaches. Emergency room notes from December, 2006 state that Plaintiff was in a car accident; was told at the scene she had muscle strain; and then went to the emergency department due to right-sided pain. She was given some prescriptions and told to follow up with her family doctor. Plaintiff's treating physician, Dr. Cristales, reported in 2009 that Plaintiff had a very limited ability to stand, walk, sit, lift, and carry. (Tr. 339). There are a number of emergency room records from later years confirming back and hip pain, including a study in 2012 which showed a labral tear in the left hip. (Tr. 1006).

In connection with a prior application for benefits, Dr. Virgil saw Plaintiff on June 11, 2009 for a psychological evaluation. She described her physical problems as arthritis of the back, degenerative joint disease in both hips, COPD, and fibromyalgia. She said she was a high school graduate but had been in special education classes. Plaintiff reported some depressive symptoms and her mood was depressed as well. Her full-scale IQ was measured at 70, with scores above 70 on all subtests. Dr. Virgil concluded that she was functioning within the borderline level of intelligence. He diagnosed major depression, moderate, and borderline intellectual functioning.

He rated Plaintiff's symptom GAF at 45 but said that "[f]rom a functional perspective, she is not prevented by strictly mental or emotional impairment from carrying out in home or community ADL tasks."  Her functional GAF was 61.  Dr. Virgil saw no impairment in Plaintiff's ability to get along with others in the workplace, thought she was mildly impaired in dealing with instructions due to borderline intelligence but could still complete routine, simple tasks, said she had no impairment in the areas of attention, concentration, persistence, and pace, and saw a moderate impairment in her ability to handle work stress.  (Tr. 626-30).  A state agency reviewer, Dr. Chambly, agreed, noting that Plaintiff was, in her view, "able to complete simple tasks in settings that are static without strict time or production schedules."  (Tr. 631-33).  A later consultative examiner, Dr. Meyer, reported that Plaintiff described a four-year history of panic attacks in addition to physical symptoms and a short attention span.  Paxil helped control her symptoms.  She had never held a job for more than six months but did get along well with supervisors and coworkers.  Her behavior and affect were normal.  Dr. Meyer rated Plaintiff's GAF at 65 and said Plaintiff could complete basic work tasks and maintain sufficient concentration and attention to do so, and also that she could tolerate low stress work situations.  (Tr. 777-89).

    The record contains a number of non-treating source opinions about Plaintiff's functional capacity.  Again in connection with a prior application, a state agency physician, Dr. Albert, expressed an opinion about Plaintiff's physical capacities on August 21, 2009, concluding that Plaintiff could do medium work although she could not climb ladders, ropes, or scaffolds and had to avoid concentrated exposure to workplace hazards.  (Tr. 671-78).  A consultative examiner, Dr. Grodner, saw Plaintiff on September 19, 2011, and noted that Plaintiff was morbidly obese,

walked with a deliberate gait with the use of a cane, and showed a decreased range of motion of the lumbar spine and left hip. An x-ray of that joint was normal, however.ND. Grodner thought that Plaintiff would have difficulty with prolonged weight-bearing activities, standing, walking, bending, squatting, kneeling, and climbing. He said that "she could at least attempt some type of sedentary activity" despite the fact that "she has a lot of pain even in the sitting position...." (Tr. 769-71).

The state agency reviews done in connection with the current application produced these opinions. On the physical side, Dr. Caldwell said that Plaintiff could lift at the light exertional level work but was capable of no more than four hours of standing with some additional restrictions. She noted that the main limiting factor was morbid obesity and, as a result, limited Plaintiff to "sedentary type work." (Tr. 56-57). Dr. Bolz later concurred in that assessment. (Tr. 94-96). Concerning Plaintiff's alleged psychological impairments, Dr. Warren concluded that Plaintiff did not have a severe psychological impairment, (Tr. 54-55), although she also evaluated her functional capacity, finding that Plaintiff could "complete a workday with an occasional extra break and [could] keep up a consistent, but not rapid, pace." (Tr. 58). Dr. Steiger agreed that no severe psychological impairment was present. (Tr. 93).

IV.   The Vocational Testimony

Dr. Robin Cook, a vocational expert, testified at the administrative hearing. Her testimony begins at page 39 of the administrative record.

Dr. Cook began by identifying Plaintiff's past relevant work as a child monitor, a medium, semi-skilled job which Plaintiff performed at the light exertional level, and a home attendant, a job which is, under the Dictionary of Occupational Titles, a medium, semi-skilled job which Plaintiff performed at the heavy

exertional level.

Dr. Cook was then asked to answer some questions about a hypothetical person who could do sedentary work and who could occasionally climb ramps or stairs, stoop, crawl, and engage in activities requiring balance, who could frequently kneel and crouch, and who could never climb ladders, ropes, or scaffolds. The person also was limited to simple, routine, repetitive tasks as part of a low-stress job which would involve only occasional decision-making and only occasional changes in the work setting. According to Dr. Cook, such a person could not do Plaintiff's past work, but he or she could work as an optical assembler, semiconductor bonder, and laminator.  She gave numbers for such jobs as they existed in the State and national economies.

Next, Dr. Cook was asked to assume that the person would also need the assistance of a cane for prolonged walking or standing.  She said that such a restriction would not alter her answer because the bulk of sedentary work was performed in a sitting position.  Dr. Cook also said that either being off task for 15% of the workday or missing more than one day per month on an unscheduled basis would eliminate all competitive jobs.  She also noted that some portion of her testimony addressed factors not explicitly addressed by the DOT but there were no inconsistencies with that source, and she testified that sitting or standing at will was not consistent with competitive employment, but that if a person could maintain one posture for at least twenty minutes, work might be available.

    V.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 8-18 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirement of the Social Security Act

through September 30, 2007.  Next, he found that she had not engaged in substantial gainful activity since her alleged onset date of June 1, 2006.

Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including disorders of the back, obstructive sleep apnea, labral tear in the left anterior thigh and hip, headaches, obesity, tobacco abuse, a pain disorder, osteoarthritis, degenerative changes to the hips and knees, edema, chronic obstructive pulmonary disease, hypertension, depression, fibromyalgia, a panic disorder, and an anxiety disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1), including sections 12.04 and 12.06.

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level except that she could never climb ladders, ropes, or scaffolds and could occasionally climb ramps and stairs.  She could frequently kneel and crouch and could occasionally stoop, crawl, and balance.  Further, she was limited to work that is simple, routine, and repetitive in nature and would be limited to a low stress job that is defined as involving only occasional decision-making and only occasional changes in a work setting.

The ALJ found that, with these restrictions, Plaintiff could not perform her past relevant work, but she could do the jobs identified by the vocational expert including optical assembler, bonder, and laminator.  He also concluded that these jobs existed in significant numbers in the State of Ohio and nationally.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises four issues.  She asserts that (1) the ALJ erred by not finding that her impairment met section 12.05(C) of the Listing of Impairments; (2) the ALJ erred by not finding that her impairment equaled section 12.05(C) of the Listing of Impairments; (3) the ALJ failed to consider the effect of obesity on Plaintiff's functional capabilities; and (4) the residual functional capacity did not properly reflect Plaintiff's capabilities. These issues are considered under the following legal standard.

<u>Standard of Review</u>.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is

-8-

supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

      A.   <u>Meeting or Equaling Listing Section 12.05(C)</u>

Plaintiff's first two arguments raise a similar issue concerning the adequacy of the ALJ's decision that she neither met nor equaled the requirements of section 12.05(C) of the Listing.  In particular, she asserts that she suffered from deficits in adaptive functioning which manifested themselves prior to age 22, and that the ALJ's reasoning for deciding otherwise was totally inadequate.  She also asserts that the ALJ made no more than a passing reference to the question of medical equivalence, and that a remand is needed in order to permit a more thorough evaluation of this issue.

As many decisions from this Court have noted, section 12.05(C) is satisfied when a claimant has another significant impairment and also suffers from mental retardation as demonstrated by a qualifying IQ score (between 60 and 70) and has deficits in adaptive functioning which manifested themselves prior to age 22.  <u>See, e.g., Pugh v. Comm'r of Social Security</u>, 2015 WL 1000452, *8 (S.D. Ohio March 5, 2015).  That latter requirement is the only one at issue here.

The ALJ, in his decision discussing the Listings, had this to say.  First, the ALJ noted that deficits in both cognitive and adaptive functioning must be demonstrated, and that the deficits in adaptive functioning must arise from the cognitive impairment.  The ALJ defined adaptive functioning as "an individual's ability to cope with the challenges of ordinary everyday life" and stated that "courts have held that if one is able to navigate activities such as living on one's own, taking care of children, paying bills, and avoiding eviction one does not suffer from deficits in adaptive functioning."  (Tr. 11-12).

The ALJ then acknowledged that the record supported a diagnosis of borderline intellectual functioning, which was a

cognitive impairment, but concluded that "the evidence discussed in section five below indicated that the claimant retained the ability to engage in a range of activities of daily living, care for herself, interact with others, and maintain her residence without significant difficulty." He therefore determined that "the claimant did not meet the requirement of listing 12.05." (Tr. 12). Plaintiff argues that the reference to Plaintiff's activities of daily living in this section of the administrative decision is too vague to be meaningful, and that the later portion of the decision does not describe these activities in any more detail, thus rendering the entire rationale provided by the ALJ "woefully inadequate in allowing anyone to figure out how the decision was reached." Statement of Errors, Doc. 9, at 10.

That is not entirely accurate. Section 5 of the ALJ's opinion does contain some references to adaptive functioning. For example, the ALJ noted that Plaintiff had told Dr. Virgil, one of the consultative examiners, that she "was able to engage in some activities of daily living and interacted with her family and friends." (Tr. 15). He also pointed to Dr. Meyer's comments that Plaintiff could work effectively in low stress environments and perform basic and simple work tasks. (Tr. 16). Lastly, he stated that "the claimant's treatment record failed to indicate that her mental health impairments" - one of which was borderline intellectual functioning - "caused severe and ongoing functional limitations." Id. Those statements help the Court in determining if the ALJ adequately considered the section 12.05(C) issue.

The Commissioner's memorandum goes into much greater detail, describing how Plaintiff told Dr. Virgil that she was able to drive, had done household chores and worked outside the home, did crossword puzzles, and socialized. That memorandum also cites additional evidence from Dr. Meyer's report, including the fact that Plaintiff had never been diagnosed with a learning disorder

and was raising three of her four children.  It also cites to evidence that Plaintiff had actually begun a post-high school course to get a nursing certificate and had dropped out for physical reasons.  Plaintiff, citing to Simpson v. Comm'r of Social Security, 344 Fed. Appx. 181, 192 (6th Cir. Aug. 27, 2009), criticizes this discussion as nothing more than a *post hoc* rationalization of the ALJ's decision which the Court should not accept.

It is important to note that there is no precise articulation requirement connected with an ALJ's finding that a particular section of the Listing of Impairments has not been satisfied, nor is there, of course, any requirement that an ALJ discuss each and every piece of evidence in the record.  See Karger v. Comm'r of Social Security, 414 Fed. Appx. 739, 753 (6th Cir. Feb. 10, 2011).  That being so, as this Court said in Owens v. Comm'r of Social Security, 2014 WL 7338759, *9 (S.D. Ohio Dec. 2, 2014), adopted and affirmed 2015 WL 145090 (S.D. Ohio Jan. 12, 2015), "[t]he real question here is not the adequacy of the ALJ's articulation of a rationale in the section of his decision devoted to [the Listing] but whether the conclusion he reached was supported by substantial evidence and whether the record supports an inference that the ALJ was aware of and considered the pertinent evidence as part of his decision-making process."

Here, the Court can discern, from its review of the administrative decision in its totality, that the ALJ was aware of the key issue - whether Plaintiff suffered from deficits in adaptive functioning caused by a cognitive impairment - and was also aware of and considered the evidence concerning that issue, including the particulars of Plaintiff's testimony (even those portions which he did not cite to directly), what she told the consultative psychological examiners, and the conclusions which both those examiners and the state agency reviewers reached about Plaintiff's ability to function both in the workplace and

elsewhere.  Certainly, there was contrary evidence, and Plaintiff's statement of errors does a good job of highlighting it; her placement in special education classes suggests some deficits in functioning (although her ability to graduate from high school with a 3.5 grade average and to pursue a post-high school education detract somewhat from that evidence).  But, as noted, she was able to work at various jobs, never reported any work difficulties arising from psychological (as opposed to physical) causes, got married, raised children, and operated a household.  She held at least two semi-skilled jobs.  To the extent Plaintiff argues that the evidence about deficits in adaptive functioning was so one-sided that the ALJ could not reasonably have reached the conclusion he did, the record simply does not support that assertion.  And, of course, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."  Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001).  Overall, the Court finds no error in the ALJ's decision concerning whether Plaintiff had an impairment which met the requirements of section 12.05(C).

   Plaintiff also argues, however, that the ALJ should have, but does not seem to have, discussed whether her impairment equaled that section.  She concedes that the ALJ did not have to obtain an expert opinion on this subject, but asserts that given the abundance of evidence from which an equivalency finding might have been made, the ALJ had at least a minimal burden to explain his decision.  The cases which Plaintiff cites, including Risner v. Comm'r of Social Security, 2012 WL 893882 (S.D. Ohio March 15, 2012) do not go that far.  Risner involved a situation where an ALJ completely failed to explain his conclusion about a particular section of the Listing.  This Court remanded the case so that the ALJ could "complete his task."  Id. at 5.  Here, the ALJ engaged in a thorough discussion of section 12.05(C).  It is

-12-

not difficult to understand that, given his conclusion that Plaintiff did not, and does not, have deficits in adaptive functioning, she was unable either to meet or to equal the requirements of that section. Again, there is substantial evidence to support that conclusion, and the ALJ's failure to engage in a separate discussion about equivalency is not error.

### B. Obesity

As her third and fourth statements of error, Plaintiff argues that the ALJ's decision did not adequately factor in either the evidence concerning her obesity or Dr. Grodner's statement that she might be able to do sedentary work on a "trial and error" basis. The Court will consider these two issues together as well.

The ALJ's decision points out that morbid obesity was one of Plaintiff's diagnoses even in the treatment records created between 2005 and 2008, and that this diagnosis appears again in 2011 records. (Tr. 13). The decision also makes several references to a recommendation that Plaintiff undergo bariatric surgery. The ALJ then focuses on the fact that "none of the claimant's treating providers indicated that they felt that her impairments were significantly debilitating, caused serious functional limitations, or prevented the claimant from working." (Tr. 14). Concerning Dr. Grodner's report, the ALJ noted his conclusion that Plaintiff could attempt sedentary work and that the state agency physicians had given significant weight to Dr. Grodner's opinion. The ALJ found these opinions "generally credible" and his RFC finding is consistent with them. He credited Dr. Grodner's conclusion about Plaintiff's functional capacity, also limiting Plaintiff to sedentary work (but on a sustained, rather than trial-and-error basis), and rejected several opinions which concluded that Plaintiff could do more strenuous work. Also, as noted above, the state agency reviewers who concluded that Plaintiff could perform some work activity

stated that morbid obesity was Plaintiff's primary limiting factor.

The Courts have consistently held that when "there is no evidence in the record, of any functional limitations as a result of .. obesity that the ALJ failed to consider," a remand for further resolution of this issue is unnecessary. See Burch v. Barnhart, 400 F.3d 676, 684 (9th Cir. 2005). Plaintiff has pointed to no such evidence here. While she faults the ALJ for making scant mention of obesity in his decision, he did find it to be a severe impairment and he clearly relied heavily on Dr. Grodner's opinion which factored obesity into his functional capacity assessment. Further, although Plaintiff argues that the Commissioner "failed to cite a single piece of evidence" to support the argument that the state agency reviewers considered the functional impact of Plaintiff's obesity, that condition is explicitly mentioned in Dr. Caldwell's review (Tr. 56)("Due to the cmnt's weight and lack of mobility, gait, and breathing, she would be able to do sedentary type work") and again by Dr. Bolz (Tr. 95)("Main limiting factor is morbid obesity"). Consequently, there was no error in the ALJ's consideration of that condition.

As to the statement made by Dr. Grodner about a "trial-and-error" work period, the ALJ clearly did not accept it. He did use Dr. Grodner's opinion as a basis for finding that Plaintiff was a bit more limited than either Dr. Bolz or Dr. Caldwell thought (both said Plaintiff could stand for four hours in a workday, as opposed to the two-hour standing limit involved in sedentary work), but the ALJ clearly concluded that Plaintiff could do sedentary work on a sustained basis. There is evidence in the record, cited above, which supports that conclusion. Plaintiff's argument, properly understood, is that the ALJ had to either accept Dr. Grodner's conclusion about a trial-and-error work period - which, clearly, he did not - or had to explain in

greater detail why he did not accept it.  But Dr. Grodner is not a treating source, so the heightened articulation rule found in 20 C.F.R. §404.1527(c) does not apply to his opinion.  Further, it is not clear that this statement is a medical opinion at all.  In any event, the Court sees no error in the ALJ's treatment of Dr. Grodner's opinion, as a whole, nor in the ALJ's explanation of why he found Plaintiff to be capable of a limited range of sedentary work.  Consequently, these issues do not provide any basis for a remand.

## VII.   Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner.

## VIII.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a _de novo_ determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d

947 (6th Cir. 1981).

                                       /s/ Terence P. Kemp
                                       United States Magistrate Judge